UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHANTRELL COOK,** | * | **CIVIL ACTION NO.:** |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| **PARISH OF JEFFERSON, ROY JUNCKER,** | * | **SECTION:** |
| **DIRECTOR DEPARTMENT OF JUVENILE** | * | |
| **SERVICES, CHRISTOPHER TROSCLAIR,** | * | |
| **ASSISTANT DIRECTOR DJS, ABC** | * | |
| **INSURANCE COMPANY,** | * | |
| Defendants. | * | |
| | * | |
| ****************************************** | * | ******************************* |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, CHANTRELL COOK ("COOK"), who hereby brings this Complaint and respectfully avers, as follows:

## INTRODUCTION

1. Plaintiff brings this action for declaratory judgment, equitable relief, and monetary damages to secure the protection against and to redress unlawful discrimination on the basis of gender, race, and retaliation under the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e *et. seq.*, as amended ("Title VII"), 42 U.S.C §1983 and Louisiana laws prohibiting intentional discrimination including the Louisiana Employment Discrimination Law codified as LSA-R.S. 23:332, *et seq.*, and La. Civil Code 2315 for intentional infliction of emotional distress and defamation.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction of the Plaintiff's Section 1981 claims pursuant to 28 U.S.C. §§1331 and 1343. The Court has original jurisdiction of the plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331, 1343, 2202, and 42 U.S.C. §2000e-5.

3. Supplemental jurisdiction over Complainant's state law claims is invoked under both Rule 18 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367, because they are part of the same case or controversy as Complainant's federal claims.

4. This Court has personal jurisdiction over the Defendants- as each defendant is either domiciled in the Eastern District of Louisiana and the acts and omissions of all defendants

occurred in the Eastern District of Louisiana.

5.Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims asserted occurred in the Eastern District.

6.Venue is also proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391 and 42 U.S.C.A. §2000e-5(g).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.Complainant has satisfied all administrative prerequisites for filing suit under Title VII and the Louisiana Employment Discrimination Law, R.S. 23:302 *et. seq*.

8.On or about June 22, 2020, Cook filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On January 7, 2021, the EEOC issued Complainant a Notice of Right to Sue.

9.This Complaint is being filed within 90 days of Complainant's receipt of the Notice of Right to Sue.

## THE PARTIES

10.Plaintiff, Chantrell Cook ("Cook"), is a person of the full age of majority, domiciled in the Parish of Jefferson, State of Louisiana. Cook is currently employed as a Juvenile Detention Officer II for Jefferson Parish Department of Juvenile Services ("DJS").

11.Defendant Parish of Jefferson ("Jefferson Parish" or "The Parish") is a government body created pursuant to the laws of the State of Louisiana and is located within the Eastern District of Louisiana. At all relevant times, The Parish is and was the Complainant's employer through the Department of Juvenile Services and had at least 20 employees.

12.Defendant Roy Juncker is the Director for the Department of Juvenile Services and a resident of Jefferson Parish. Suit is brought against Juncker in his individual and official capacities.

13.Defendant Christopher Trosclair is the Assistant Director for the Department of Juvenile Services and a resident of Jefferson Parish. Suit is brought against Trosclair in his individual and official capacities.

14.Defendant ABC Insurance Company, upon information and belief, issued a policy of insurance to the Parish which provides coverage for the acts and omissions alleged in this Complaint.

15.Each of the acts and omissions complained of in this Complaint were committed

by the defendant and its agents while in the course and scope of their employment with the Parish.

16. In doing the acts and/or omissions alleged, Defendants acted under color of authority and/or color of state law.

**FACTUAL ALLEGATIONS**

17. Plaintiff, Cook (African American Female), was hired on December 23, 2006 to serve as a Juvenile Probation Officer I, for DJS. Cook was promoted to a Juvenile Probation Officer II effective October 13, 2007 and stayed in that position until her wrongful demotion of January 4, 2020 to a Juvenile Detention Officer II.

18. Cook's yearly evaluations for every year from 2007 through July of 2020 indicated that she always either met or exceeded expectations and her pay was increased for her exemplary performance; except for the evaluation of January 7, 2020 that evaluated her performance as below expectations, was placed on probation without her knowledge, and denied a 5% raise.

19. DJS probation officers are divided into units. On or about 2015 Cook was transferred to the Drug Court unit. Cook excelled in the position and repeatedly received praise from the families she worked with; she supported the juvenile probationers she worked with and was even invited to their graduations from the program after her departure from the unit.

20. Cook was advised that the move was due to the need to rotate probation officers every two to three years out of the units, however, Luis Bustamante (Caucasian Male) has held his position for more than five years without being rotated out.

21. Around March of 2019, it was announced that Cook would be removed from Drug Court and replaced by Erin Ronquille (Caucasian Female). The move out of Drug Court reduced Cook's pay because she would no longer be eligible for additional pay for being on call and the cell phone stipend provided to the Drug Court probation officer.

22. In May of 2019, Cook was instructed to train her predecessor, Ronquille. Cook was not trained by her predecessor when she was transferred into Drug Court and learned the position by shadowing the probation officer prior to assuming the position. Soon after beginning to train Ronquille, Cook began to be treated differently, it was evident that Ronquille was complaining about Cook to Ruiz and Probation Officer III Colleen Conley. Initially Ronquille complained that Cook was not teaching her how to be a probation officer, however, shortly thereafter, on May 20, 2019, Ronquille advised Ruiz that Ronquille felt that she no longer

required training and was comfortable working the position. As of May 21, 2019, Ronquille officially became the Drug Court probation officer.

23.     Shortly thereafter Cook was contacted by her supervisor, Probation Officer III, Gloria Meisky and told that Probation Manager Ruiz directed Meisky to tell Cook that she was not permitted to be present at Drug Court hearings or to visit with the two Drug Court team members, Susie Savage, and Ianisha Chairs because it makes Ronquille uncomfortable. Cook was shocked by the directive because she wanted to support the juvenile probationers she had worked so closely with to attend their graduations from the program. Cook was not allowed to attend the graduations to ensure that Ronquille did not feel uncomfortable by Cook's presence. While Cook was banned from Drug Court proceedings Probation Officers Steve Boseman (Caucasian Male), Sheena Campbell (Caucasian Female) and Luis Bustamante (Caucasian Male) were all still permitted to observe Drug Court proceedings and graduations.

24.     After Miesky gave Cook Ruiz's instructions about Drug Court Cook requested a mediation with herself, Meisky, Ronquille, Donya Decou-Snowton (Drug Court Supervisor), and Ruiz to discuss the issue. Ruiz denied Cook's request for a mediation. Cook then requested a meeting with the Director, Roy Juncker.

25.     On or about August 19, 2019 Juncker held a meeting with Cook, Ronquille, Miesky, Ruiz, and Decou-Snowton. Cook advised that she felt she was being treated unfairly, discriminated against, and targeted regarding Drug Court. Juncker admonished Cook and defended Ronquille. Cook's concerns were dismissed and never properly addressed. Thereafter the retaliation and harassment increased.

26.     On the morning of Monday, November 25, 2019, Cook was called on the phone by Probation Officer III, Cook's former supervisor, Colleen Conley and asked about a former Drug Court probationer while Ronquille was in Conley's office. At the time Conley was not the Drug Court supervisor, nor Ronquille's supervisor. Cook responded to her questions and then went to meet with Lashaunda Thomas, the Drug Court Supervisor to advise her of the conversation. Cook was worried why Conley would be calling her about Drug Court because of the directive from Ruiz and decided to advise Thomas of the conversation. Cook then sent a text message to Thomas advising of the conversation.

27.     Cook mistakenly sent the text message to Conley. The text message stated "Colleen just called me and asked me about my kid I transferred the Probation out of town to live

with his brother. I don't' know if y'all trying to transfer someone in DC but I think she just came from by Colleen (not 100% sure). This is the second time she asked me about a pass case of mine."

28. Cook realized her mistake and sent a follow up message to Conley stating, "Come on I know you want to have a conversation." Conley never responded but instead immediately called Ruiz, who was on vacation, and told her that she believed that Cook meant to send the text message to Ianisha Chairs, in Drug Court. Ruiz then contacted Roy Juncker who instructed Trosclair to immediately begin an investigation.

29. As of 3:55 pm that same day Conley had sent a corrected statement to Trosclair advising of her call to Cook with Ronquille and the text message she received from Cook. Conley's statement says, "It appeared, to me, that it was meant for someone in Drug Court." At 9:36 pm Trosclair sent Cook a series of accusatory questions about the text message with a deadline to respond by 3:00 pm the following day.

30. Cook provided her responses to Trosclair and explained that she meant to send the text to the current Drug Court supervisor in case there was a similar situation going on with a current Drug Court probationer as the situation about the juvenile she was questioned about by Conley.

31. On December 11, 2019, Cook was issued a Pre-Disciplinary Hearing Letter. The Letter advised Cook was accused of attempting to engage in inappropriate communication with someone from an outside agency in order to impair the operational effectiveness of the Department of Juvenile Services. Cook was advised she was charged with acts of serious work misconduct in violation of Jefferson Parish Administrative Management Policies: 501 General Provisions; 502- Maintaining Standards of Effective Service; and 503- Reporting and Performance of Duty

32. On December 16, 2019, Cook presented for her pre-disciplinary hearing. During the hearing she was peppered with questions from Gretchen Tilton (HR Manager), Christopher Trosclair, Joan Ruiz, and Roy Juncker. Although some of the discussion surrounded the facts outlined in the pre-hearing notice, additional questions and allegations were presented to Cook, which were outside of the scope of the conduct described in the pre-disciplinary hearing notice. Specifically: 1) Evaluations rendered to Cook while under the supervision of Colleen (George) Conley; 2) Complaints by Erin Ronquille, claiming she was

being undermined after she replaced Cook as the Drug Court Probation Officer; 3) Who Cook communicates with on the Drug Court team, specifically Ianisha Chairs, Susie Savage, and Courtney Schroeder and how often; 4) Cook's transfer from the Drug Court team; 5) If Cook ever spoke to anyone outside the agency to try and prevent her transfer out of drug court; 6) If Cook ever had any discussions with Blair Constant, Assistant District Attorney for Drug Court, about staying in Drug Court; and 7) Questioned and pressured to provide Juncker with her personal cell phone so he could look at her private messages.

33. On January 2, 2020, Cook was presented with a disciplinary letter (the first discipline of her 13-year tenure at DJS) advising of her demotion and policy violations. She was found to have violated 501 General Provisions Section 1, Conformance to Law and Section 7 Conduct Unbecoming and Employee; 502 Maintaining Standards of Effective Service Section 1 Establishment; 503 Reporting and Performance of Duty Section 2 2.1 Licensure and proficiency. 2.2 appropriate action, 2.3 carrying out assigned duties, and 2.4 compliance with policies. Cook's demotion was effective January 4, 2020 and required her to now work at the Detention facility Rivarde from 3 pm to 11 pm. The change in schedule was an additional burden on her family because of childcare.

34. On January 1, 2020, Cook's yearly evaluation was due to be completed. Cook completed her self-evaluation and provided it to her supervisor on December 9, 2019. After she was provided with her disciplinary letter, she was advised that her evaluation would not be completed until the following Monday or Tuesday, that it was on hold per Joan Ruiz. Cook's evaluation was completed by Ruiz on January 7, 2020 and rated her at below expectations. Ruiz gave Cook a 0 in working with others and noted the incident of November 25, 2020 as support for her rating. Ruiz was not Cooks supervisor at the time but was the Probation Manager, therefore, proper procedure was for Cooks immediate supervisor to complete her evaluation.

35. On January 28, 2020, Cook filed a Civil Service appeal to her demotion from Juvenile Probation Officer II to Juvenile Detention Officer II. Cook's hearings were continued by the parish seven times with the final day of testimony on March 2, 2021. During the hearing Juncker testified repeatedly that he believed that Cook was lying about who she meant to send the text to, and that he would only be satisfied that she did not intend to send the text to someone in Drug Court if he could look at her personal phone messages with Susie Savage and Ianisha Chairs as well as her contact list. Ruiz also testified that she believed that Cook meant to send

6

the text to Ianisha Chairs. A ruling has yet to be rendered in the Civil Service matter.

36. Cook continued to be discriminated, harassed, and retaliated against after her move to Rivarde. Cook filed her EEOC charge on June 22, 2020.

37. Unbeknownst to Cook, she was placed on probation after her demotion and evaluation. Cook did not discovery that she had been placed on probation after her evaluation in July of 2020, which was completed by her supervisor at Rivarde and was evaluated as meeting expectations.

38. Rumors spread throughout DJS about Cook's demotion and move to Rivarde, which was exacerbated by Juncker's announcement at personnel meetings about the pending civil service appeals that were preventing DJS from hiring additional staff. The rumors were so pervasive that on August 24, 2020, Cook filed a grievance against another Detention Officer, J. Taylor for telling a youth resident that Cook was fired from her position as a probation officer.

39. The discrimination, retaliation, and harassment have continued since 2019. Cook received a coach and counseling on 3/11/2021 alleging that she allowed a female resident into the Rivarde facility that tested positive for covid. The juvenile was admitted by the Detention Officer at the front desk, Bills. A Covid check should be done upon entry, however, Cook was advised by the juvenile that she needed to see the nurse when Cook was filling out her property intake sheet. The juvenile explained to Cook that she thought she had covid because she had no sense of smell and a headache. Cook was still disciplined even though she was not the admitting officer.

40. Cook asserts that other non-African American employees and men in DJS have been treated more favorably than herself, were afforded progressive discipline or no discipline at all after failing to follow policy and/or department guidelines, for which Cook was disciplined, any vehemently denies that she violated any policy.

41. The Defendants acts and/or omissions caused Cook to suffer mental, emotional, and psychological harm.

42. Cook has suffered substantial loss in present and future wages, employment benefits, and future career opportunities because of Defendants' unlawful conduct.

## CLAIMS FOR RELIEF

### COUNT 1
Violation of 42 U.S.C. §1981

43. Cook re-alleges and incorporates herein by reference all the foregoing allegations.

44. Cook is a member of a protected class, as an African American. Defendants actions are in violation of the rights afforded Cook by the Civil Rights Act 1866, 42.U.S.C. §1981, as amened by the Civil Rights Act of 1991.

45. By conduct described above, Defendants intentionally deprived Cook of the same rights enjoyed by white citizens to the creation, performance, enjoyment and all benefits and privileges of their contractual employment relationship with Defendants, in violation of 42 U.S.C. §1981.

46. As a result of Defendants' discrimination in violation of Section 1981, Cook has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Defendants' actions, thereby entitling her to compensatory damages.

47. In its discriminatory acts described above, Defendants acted with malice or reckless indifference to Cook's rights, thereby entitling her to punitive damages.

## Count 2

### Title VII, 42 U.S.C. § 2000e-2(a)
### Disparate Treatment – Gender

48. Cook re-alleges and incorporates herein by reference all the foregoing allegations.

49. Cook is a member of a protected class, as an African American female, and is qualified for the position she held.

50. Cook was the subject of mistreatment by several Parish employees, including but not limited to Christopher Trosclair and Roy Juncker based on her gender. On multiple occasions Trosclair and Juncker treated Cook differently than other non-female employees, who were either disciplined less harshly or not at all for similar or more egregious policy violations than those alleged against Cook in her pre-disciplinary hearing.

51. Cook reported the discriminatory conduct to her employer, who failed to take reasonable remedial measures.

52. Defendant Trosclair's actions were taken with malice and reckless disregard for Cooks' right to be treated on an equal basis with men.

53. Defendant Juncker did not take reasonable remedial measures to address the discriminatory actions of his subordinates, in reckless disregard for the Cook's rights as secured by federal law.

8

54. The Parish discriminated against Cook in violation of 42 U.S.C. § 2000-e2(a).

## COUNT 3

### Title VII, 42 U.S.C. § 2000e-2(a)
### Disparate Treatment – Race

55. Cook re-alleges and incorporates herein by reference all the foregoing allegations.

56. Defendants discriminated against Cook based on her race. Cook was treated differently than other non-African American, and Caucasian similarly situated employees. She was treated more harshly, scrutinized, and/or disciplined more severely than other non-African American and Caucasian similarly situated employees.

57. Defendants failed to exercise reasonable care either to prevent this discrimination or to promptly correct these practices.

58. Defendants' conduct was intentional and done with malice or with reckless indifference to Cook's federally protected rights.

59. The Parish discriminated against Complainants in violation of 42 U.S.C. § 2000-e2(a).

## COUNT 4

### Title VII, 42 U.S.C. § 2000e-3(a)
### Retaliation

60. Cook re-alleges and incorporates herein by reference all the foregoing allegations.

61. Cook engaged in protected activity, by opposing the disparate treatment and discrimination as describe in preceding paragraphs.

62. The Parish, through Trosclair, Juncker, and others, retaliated against Cook by engaging in a series of materially adverse actions against her that would have dissuaded a reasonable person from complaining of discrimination.

63. Defendants took the adverse actions against Cook because of her protected activities.

64. Defendants' actions were taken with malice and reckless disregard for Cook's right be free from discrimination in the workplace.

65. For the foregoing reasons, the Parish retaliated against Cook in violation of 42 U.S.C. § 2000-e3(a).

## COUNT 5

### 42 U.S.C. §1983
### Deprivation of a Vested Property Right

66. Cook re-alleges and incorporates herein by reference all the foregoing allegations.

67. The Fifth and Fourteenth Amendments of the United States Constitution, as well as the Louisiana Constitution and Louisiana law establish a constitutionally protected property right to due process for civil servants.

68. Cook enjoys a vested property right in her position as a civil servant and can only be demoted for cause after due process.

69. The demotion was without cause, arbitrary and capricious, and resulted in a clear denial of Cook's guaranteed and vested property right in her employment.

70. Cook was not provided adequate notice and an opportunity to be heard in advance of the pre-disciplinary hearing, the hearing included discussion of accusations and alleged policy violations not included in the pre-disciplinary hearing notice. Further, Defendants failed to follow its policies relating to the pre-disciplinary hearing and failed to provide written notice of the reasons for the adverse employment action and how the policies were violated.

## COUNT 6

### State Law Discrimination based on Race and Gender and Retaliation
### LA. R.S. § 23:3301 et. seq.

71. Cook re-alleges and incorporates herein by reference all the foregoing allegations.

72. Defendants are liable to Cook under the Louisiana Employment Discrimination Law, La. R.S. § 23:3301 *et. seq*. as described in the preceding paragraphs.

## COUNT 7

### Wrongful Demotion LSA C.C. 2315

73. Cook re-alleges and incorporates herein by reference all the foregoing allegations.

74. Cook brings an action against the Defendants for wrongful demotion pursuant to LSA C.C. art. 2315, when individual defendants, acting in their individual or official capacities as employees of Jefferson Parish demoted Cook without cause and the decision was arbitrary and capricious.

75. By virtue of respondeat superior, Jefferson Parish is legally responsible and may be held liable for the actions of its employees.

76. As a consequence of her demotion, Cook suffered loss of earnings and will continue

to suffer loss of future earnings as well as mental distress.

## COUNT 8

### Defamation

77. Cook re-alleges and incorporates herein by reference all the foregoing allegations.

78. In Louisiana, defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. *Fitzgerald v. Tucker*, 98-2313, p. 10 (La. 6/29/99), 737 So. 2d 706, 715; *Trentecosta v. Beck*, 96-2388, p. 10 (La. 10/21/97), 703 So. 2d 552, 559; *Sassone v. Elder*, 626 So. 2d 345, 350 (La. 1993). "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Trentecosta*, 96-2388 at 10, 703 So. 2d at 559 (citing RESTATEMENT (SECOND) OF TORTS§ 558 (1977)).

79. A defamatory communication is one that tends to harm the reputation of another to lower that person in the opinion of the community or to deter third persons from associating or dealing with him. *Sassone v. Elder,* 626 So. 2d 345, 352 (La. 1993).

80. Defamatory words include almost any language which on its face tends to injure a person's reputation. *Cortez v. Shirley,* 555 So. 2d 577, 579 (La. App. 1st Cir. 1989).

81. The statements made by Juncker and other supervisors at DJS that Cook was lying about who she intended to send the text on November 25, 2020 to and the subsequent rumors have defamed Cook.

82. The false and defamatory statements made by the Defendants have caused and continue to cause damage to Cook.

## JURY DEMAND

83. Cook demands a Jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** after due proceedings are had, Cook prays that this Complaint be deemed good and sufficient; and that this Court assume jurisdiction of this action and after trial:

i. Declare, pursuant to 28 U.S.C. § 2202 that the Defendants unconstitutionally violated Cook's constitutional rights;

ii. Grant Cook a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert with Defendant and at Defendant's request, from

11

      continuing to violate Title VII and state anti-discrimination laws;

iii. Grant Cook compensatory damages for:

    1. Mental Anguish, Anxiety, and Emotional Distress;

    2. Back Pay, Loss of Future Earnings, and Loss of Earnings Capacity;

    3. Loss of Benefits;

iv. Grant Cook punitive damages in an amount to be determined at trial; and

v. Award Cook such other relief and benefits as the cause of justice may required, but not limited to, an award of costs and attorney's fees.

vi. For any and all other just and equitable relief to which Cook may be entitled whether or not pled herein.

                                Respectfully Submitted,

                                ***/s/ Stephanie Dovalina***
                                Stephanie Dovalina, LSBA #31137
                                700 Camp Street, Ste. 105
                                New Orleans, LA 70130
                                Phone No.: (504)528-9500
                                Mobile: (504) 339-9815
                                Fax: (504) 353-9516
                                stephanie@dovalinalawgroup.com
                                Attorney for Chantrell Cook