UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHANTRELL COOK | * | CIVIL ACTION |
| | * | NO. 21-719 |
| | * | |
| VERSUS | * | DIVISION 1 |
| | * | |
| | * | MAGISTRATE JUDGE |
| PARISH OF JEFFERSON, ET AL. | * | JANIS VAN MEERVELD |
| | * | |
| ********************************* | * | |

ORDER AND REASONS

In this employment discrimination lawsuit, plaintiff Chantrell Cook alleges that she experienced unlawful discrimination on the basis of her gender, race, and retaliation in violation of federal and state law. She also claims to have suffered due process violations, that defendants are liable for defamation and conspiracy, and the defendants have violated her rights under 42 U.S.C. § 1981. Defendants have filed a Partial Motion to Dismiss. (Rec. Doc. 15).

The court now finds that Cook's claim for punitive damages against Jefferson Parish under 42 U.S.C. §1981 must be dismissed because punitive damages are not available against municipalities. Further, the court finds that Cook has failed to state a claim for a procedural due process violation because she alleges that she received notice and an opportunity to be heard and that her substantive due process claims must be dismissed as to Jefferson Parish because she has failed to state a claim for municipal liability and as to Trosclair because he is entitled to qualified immunity. However, the court finds that Cook has stated a claim for a substantive due process violation by Juncker, and this claim will be allowed to proceed. Further, both her defamation claim and her conspiracy claim must be dismissed because intra-corporate communications cannot satisfy the "publication" element of a defamation claim and intra-corporate conspiracies cannot support a conspiracy claim under 42 U.S.C. § 1985. However, because Cook argues in opposition

1

that the disciplinary hearing was public, Cook may seek leave to amend as to her defamation claim if she can allege additional facts to establish that statements made at the hearing were published to others besides Jefferson Parish Department of Juvenile Services employees. Finally, Cook has failed to state a §1981 claim against her supervisors and she has failed to state a claim for harassment or hostile work environment.  Accordingly, it is ordered that Defendants' Motion is GRANTED in part and DENIED in part.

## Background

Cook is an African-American woman who has been employed at the Jefferson Parish Department of Juvenile Services ("DJS") since 2006. In this lawsuit, she alleges that her demotion from Juvenile Probation Officer II to Juvenile Detention Officer II on January 4, 2020, resulted in a violation of her rights and that statements made by the defendants during her termination proceedings defamed her.[1]

Cook alleges that she began working in the Drug Court Unit of DJS in 2015 where she was repeatedly praised by the families she worked with. Around March 2019, it was announced that Cook would be removed from Drug Court and replaced by Erin Ronquille, a Caucasian female. Cook was told the move was due to the need to rotate probation officers out of units every two to three years. However, she alleges that Luis Bustamante, a Caucasian male, had held his position for more than five years without being rotated out. Being moved out of the Drug Court Unit would reduce Cook's pay because she would no longer be eligible for additional pay for being on call or for a cell phone stipend.

---

[1] In addition to the claims under 42 U.S.C. §1981 *et seq.* and her state law defamation claim, Ms. Cook asserts claims for racial and gender employment discrimination and retaliation under 42 U.S.C. § 2000e. Defendants do not seek to dismiss those claims at this time.

In May 2019, Cook was instructed to train Ronquille. She alleges that she had not been trained by her predecessor when she was transferred into the Drug Court Unit. Cook alleges that probation manager Joan Ruiz began treating her differently and she believes this is because Ronquille was complaining to Ruiz about Cook. Ronquille advised Ruiz she no longer required training and became the official Drug Court probation officer as of May 21, 2019.

Cook complains that before she was transferred out of Drug Court, she was instructed not to be present at Drug Court hearings or visit with the two other Drug Court team members, Susie Savage and Ianisha Chairs, because it made Ronquille uncomfortable. She was also prohibited from attending the graduations of the juvenile probationers. Cook was shocked because she wanted to support the probationers. Cook alleges that no other probation officer was subject to these requirements. She advised Probation Officer III Gloria Miesky that she felt like she was being harassed and Miesky recommended a mediation between Ruiz, Cook, Drug Court Supervisor Decou-Snowton, and Ronquille. But Ruiz denied the request.

Cook requested a meeting with the Director, Roy Juncker, who met with her, Ronquille, Mieskey, Ruiz, and Decou-Snowton on or about August 19, 2021. Cook alleges that when she advised she was being treated unfairly and discriminated against, Juncker yelled at her and defended Ronquille. Cook asserts that her concerns were dismissed and never properly addressed.

On November 25, 2019, Cook was called by Probation Officer III Colleen Conley, her former supervisor, and asked about a former Drug Court probationer while Ronquille was in Conley's office. Cook was not the Drug Court supervisor at that time. Cook asserts that she responded to Conley's questions and then sought to meet with Lashaunda Thomas, the Drug Court Supervisor, to advise her of the conversation. Cook alleges that because Thomas was meeting with

other employees, she decided to send Thomas a text message to advise of the conversation with

Conley. Cook then mistakenly sent the message to Conley, stating:

> Colleen just called me and asked about my kid I transferred the Probation out of
> town to live with his brother. I don't know if y'all trying to transfer someone in DC
> but I think she just came from by Colleen (not 100% sure). This is the second time
> she asked me about a pass case of mine.

(Rec. Do. 14, at 7). Cook realized her mistake and sent a follow up message stating "Come on  I

know you want to have a conversation." Id.

Conley did not respond, but instead called Ruiz, who was on vacation, and told her that she

believed Cook meant to send the message to Ianisha Chairs (an African-American Drug Court

employee). Ruiz called Juncker who instructed Christopher Trosclair, the Assistant Director of

DJS, to begin an investigation. At 9:36 p.m., Trosclair sent Cook a series of allegedly accusatory

questions about the text message with a deadline to respond by 3:00 p.m. the following day. Cook

provided her responses to Trosclair, including her explanation that she had intended to send the

message to the current Drug Court supervisor in case there was a similar situation going on with a

current Drug Court probationer as the situation with the probationer about whom she had been

questioned by Conley.

On December 11, 2019, Cook was issued a Pre-Disciplinary Hearing Letter accusing Cook

of attempting to engage in inappropriate communication with someone from an outside agency in

order to impair the operational effectiveness of DJS and charging her with acts of serious work

misconduct in violation of Jefferson Parish Administrative Management Policies: 501 - General

Provisions; 502 - Maintaining Standards of Effective Services: and 503 - Reporting and

Performance of Duty.

Cook appeared for her pre-disciplinary hearing on December 16, 2019. She alleges that she

was peppered with questions from HR Manager Gretchen Tilton, Trosclair, Ruiz, and Juncker. She

alleges that although some of the discussion concerned the facts outlined in the pre-hearing notice, additional questions and allegations were presented such as: evaluations issued to Cook while under Conley's supervision; complaints by Ronquille that she was being undermined; who Cook communicates with on the Drug Court team—specifically Chairs, Savage, and Courtney Schroeder—and how often; Cook's transfer from the Drug Court team; if Cook ever spoke to anyone outside the agency to try and prevent her transfer out of the Drug Court Unit; if Cook ever had any discussion with Blair Constant, Assistant District Attorney for Drug Court, about staying in Drug Court; and questions and pressure to provide Juncker with her personal cell phone so he could look at her private messages.

Cook alleges that prior to her demotion, Juvenile Home Detention Officer Silby overheard Trosclair stating he was going to "get" Cook. Shortly thereafter, Silby saw Ronquille depart from Trosclair's office.

Cook received a disciplinary letter on January 2, 2020, advising her of her demotion and policy violations for attempting to engage in inappropriate communication with someone from an outside agency; failing to be forthcoming in her explanation of what occurred; making contradictory statements regarding her intent; demonstrating poor judgment; and neglecting her duty as a Juvenile Probation Officer II.

The demotion was effective January 4, 2020, and required that she work from 3:00 p.m. to 11:00 p.m. at the Rivarde Detention Facility instead of 9:00 a.m. to 5:00 p.m. The change in schedule was an additional burden for her family because of childcare needs. Additionally, her previous position had allowed her to use her master's degree.

Meanwhile, Cook's yearly evaluation was due to be completed on January 1, 2020. Cook completed her self-evaluation on December 9, 2019, and the evaluation was completed by Ruiz on

January 7, 2020. Ruiz lowered the rating that Cook's supervisor had initially awarded, including a rating of 0 in factor U7: Working with Others. As support for her rating, Ruiz noted the November 25 incident and the assertion that Cook tried to block her transfer out of Drug Court by contacting two individuals to intercede for her. Cook alleges that during the disciplinary hearing at which Ruiz was present,  she stated that she never asked anyone to intervene for her to prevent her transfer out of Drug Court. Cook alleges that Ruiz has no documentation or information to support her false statement. Cook also alleges that Ruiz was not her supervisor and that the proper procedure was for the supervisor to complete the evaluation. As a result of the 0 rating, Cook was placed on probation and became ineligible for a 5% raise.

Cook filed a Civil Service appeal of her demotion on January 28, 2020. The hearings were continued seven times with the final day of testimony on March 2, 2021. At the hearing Juncker testified that he believed Cook was lying about who she meant to send the text to and that he would only be satisfied if he could look at her personal phone messages with Savage and Chairs and her contact list. Ruiz also testified that she believed Cook meant to send the text message to Chairs. Cook alleges that Juncker never provided any proof that Cook had lied or did anything in violation of any policy. Juncker further testified that Cook was disciplined for failing to follow a directive from Ruiz not to participate in Drug Court. Cook complains that this directive was never given to Cook and further, this reason for her demotion was not provided to her in writing and was not discussed at her pre-termination proceeding.

The Referee dismissed Cook's appeal. Cook alleges this decision was based on a factually erroneous ruling that did not even get the dates of the incident correct.

Cook then filed an appeal to the Board, which, she claims, refused to review the information and evidence provided and instead upheld the ruling. Cook insists that she presented

proof that the rulings were false and that the ruling found that Cook had been demoted for failing to follow a directive that was never mentioned in her demotion letter or at all until Juncker's March 2021 testimony.

Cook alleges that she continued to be discriminated against, harassed, and retaliated against after her move to Rivarde.[2]

In support of her §1983 claim for deprivation of a property right, Cook alleges that she enjoys a vested property right in her position as a civil servant. She alleges that her demotion was without cause, arbitrary, and capricious. She alleges that she was not provided adequate notice and an opportunity to be heard in advance of the pre-disciplinary hearing because the hearing included discussion of accusations and alleged policy violations not included in the pre-disciplinary hearing notice. She further alleges that the demotion was based on suspicion, conjecture, and false statements. She insists there is no evidence to support the claim that she violated any policy, that she shared information outside the agency, or that she lied about who she intended to send the text message to. She also alleges that the defendants failed to follow their own policies relating to the pre-disciplinary hearing and failed to provide written notice of the reasons for the adverse employment action and how the policies were violated.

In support of her defamation claim, Cook alleges that the statements made by Juncker, Ruiz, and Conley that Cook was lying about who she intended to send the text message to in November and the subsequent rumors have defamed her and continue to cause damage to her reputation and career development.

In support of her conspiracy claim, Cook alleges that Ruiz, Conley, Ronquille, Juncker, and Trosclair were motivated by a racially discriminatory animus against Cook in conspiring to

---

[2] Because these additional facts are not relevant to the claims presently being considered, they are not summarized here.

deprive her of her constitutionally protected right to her position. She alleges that Conley acted in furtherance of the conspiracy when she contacted Ruiz while Ruiz was on vacation on November 25, 2019, to tell her she received a text message from Cook she believed was intended for Chairs. She alleges that Ruiz acted in furtherance of the conspiracy by immediately calling Juncker, that Juncker furthered the conspiracy by hastily contacting Trosclair to conduct an investigation, and that Trosclair furthered the conspiracy by sending Cook questions that night that assumed the text was meant for Chairs and requiring an immediate response. Cook alleges that Ruiz, Conley, Trosclair, and Juncker acted together to create and fabricate a reason to demote Cook. She alleges they provided false and misleading statements about unsubstantiated claims about the mistaken text message.

Cook filed this lawsuit on April 7, 2021, against Jefferson Parish, Trosclair, and Juncker. The parties unanimously consented to proceed before the magistrate judge and the matter has been referred to the undersigned for all proceedings. After defendants filed their original motion to dismiss, Cook filed her First Supplemental and Amending Complaint. The defendants then filed the present Partial Motion to Dismiss. (Rec. Doc. 15).

<u>Law and Analysis</u>

1.  *Standard for Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing

them in the light most favorable to the plaintiff." <u>In re</u> <u>Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id</u>. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

> 2. *Punitive Damages under § 1981*

It is well settled that municipalities are immune from punitive damages under 42 U.S.C. § 1983. <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981). Similarly, punitive damages are not available against a government, government agency or political subdivision under 42 U.S.C. § 1981. <u>Oden v. Oktibbeha Cty., Miss.</u>, 246 F.3d 458, 465–66 (5th Cir. 2001).

Defendants argue that Cook's remaining claim for punitive damages against Jefferson Parish should be dismissed. Cook responds that punitive damages are available where a defendant's conduct is outrageous or because of a defendant's reckless indifference to the rights of others.

Cook is correct as the law pertains to government officials and non-government actors. For example, in the case cited by Cook, the United States Supreme Court considered the standard for assessing punitive damages against five guards and correctional officers under § 1983. <u>Smith v.</u>

Wade, 461 U.S. 30, 56 (1983). Importantly though, Cook has offered no legal support for imposing punitive damages on a municipality such as Jefferson Parish.

The court finds that Cook's claim for punitive damages against Jefferson Parish under § 1981 and § 1983 must be dismissed because punitive damages are not available under those statutes as to a political subdivision.

### 3.  Due Process Violation

The court assumes that Cook is asserting both a procedural and substantive due process claim, although she only explicitly refers to a "Procedural Due Process claim" in her complaint.[3] As discussed below, Cook has failed to state a procedural due process claim. Further, the court finds that Cook's substantive due process claims as to Jefferson Parish must be dismissed because she has not stated a claim for municipal liability and as to Trosclair because based on the facts alleged, he is entitled to qualified immunity. However, as to Juncker, the court finds Cook has stated a claim for a substantive due process violation.

### i.  Procedural Due Process Claim

To establish a procedural due process claim, plaintiff must "show that (1) she was deprived of a liberty or property interest protected by the due process clause, and (2) that she was deprived of that interest without constitutionally adequate process." LaCroix v. Marshall Cty., Mississippi, 409 F. App'x 794, 803 (5th Cir. 2011).

"In Louisiana, a permanent classified civil service employee has a protected property interest in her job." Wallace v. Shreve Mem'l Libr., 79 F.3d 427, 431 (5th Cir. 1996); see Hudson v. Dep't of Pub. Safety & Corr., Louisiana State Penitentiary, 96-0499 (La. App. 1 Cir. 11/8/96),

---

[3] Cook's complaint claims to assert a "Procedural Due Process claim." However, she cites the standard for a substantive due process claim in both her complaint and in her opposition to defendants' Motion to Dismiss. In her opposition memorandum, she explicitly invokes substantive due process, though she also seems to argue that her procedural due process rights were violated.

682 So. 2d 1314, 1318. It is not clear whether defendants dispute Cook's allegation that she is a permanent civil servant. Indeed, they cite no law to contest Cook's classification as a civil servant. Yet in seeking dismiss Cook's substantive due process claim, they argue that Cook must establish a protected property interest. (Rec. Doc. 51-1, at 10). To the extent defendants intend to challenge Cook's claim that she is a permeant civil servant with a property interest in her job or that her demotion did not result in a denial of that property interest, they have failed to show why that is the case. For purposes of defendants' motion, the court assumes that Cook is a permanent civil servant with a protected property interest in her job and that her demotion amounted to a denial of that property interest.

In the case of a public employee, due process requires that the employee be provided "some kind of a hearing" prior to termination. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, (1985). At a minimum, the employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546. Where the pre-termination hearing is minimal, due process "requires a full hearing after termination" and "at a meaningful time." Schaper v. City of Huntsville, 813 F.2d 709, 716 (5th Cir. 1987). Indeed, courts have held that errors in the pre-termination proceeding can be remedied by post-termination proceedings that meet due process requirements. See Glenn v. Newman, 614 F.2d 467, 472 (5th Cir. 1980). For example, in Glenn, the United States Court of Appeals for the Fifth Circuit found that although the pre-termination proceeding did not meet due process requirements, due process was satisfied because in the post-termination proceedings, the employee "received written notice of the charges against him and was given sufficient time to prepare for the hearing . . . he was represented by an attorney who examined and cross-examined witnesses on his behalf, and he was allowed to present his case orally." Id.

Similarly, the Fifth Circuit in <u>Finch v. Fort Bend Independent School District</u> found that procedural due process was satisfied where the superintendent met with the principal prior to reassigning the principal to the maintenance department, the principal received written notice of the reasons for her reassignment and of the opportunity to use the grievance process, and she participated in at least one grievance hearing in front of the school board with counsel representing her and an opportunity to testify under oath. 333 F.3d 555, 562 (5th Cir. 2003). The court of appeals found that "[b]ecause the grievance process gave [the principal] an opportunity to present her basic argument—that she should be working as a school principal rather than in the maintenance department—and the process was complete before she resigned, procedural due process is satisfied." <u>Id.</u>

As to the timing, the Supreme Court has observed that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." <u>Loudermill</u>, 470 U.S. at 547. In <u>Loudermill</u>, the Court found that an alleged 9-month delay with no other indication that the wait was unreasonably prolonged was insufficient to state a claim for deprivation of constitutional due process. <u>Id.</u>

Defendants argue that Cook's own allegations establish that they satisfied the requirements for a pre-disciplinary hearing. First, they point out that she alleges that she received written notice of the pre-disciplinary hearing accusing her of attempting to engage in inappropriate communication with an outside agency that outlined the specific policies allegedly violated. They note that although she did not receive written notice of the additional issues allegedly discussed during the hearing, she had the opportunity to address them thereby having the ability to provide her version of events. They add that the policies she was found to have violated are the same policies outlined in the pre-disciplinary hearing notice letter.

Further, defendants argue that any deficiencies in the pre-disciplinary process were cured by Cook's ability to participate in post-disciplinary proceedings. Additionally, they argue that Cook received another level of review by the Personnel Board that upheld the referee's decision.

In opposition, Cook conflates her substantive due process and procedural due process claims. The court attempts to disentangle her arguments. As to her challenge to the sufficiency of the process, she argues that following state administrative proceedings does not bear on whether constitutionally mandated due process requirements have been satisfied.[4] She argues that her due process rights were violated because her disciplinary hearing was reset seven times resulting in a delay of over a year; because she was placed on probation after her demotion and was not advised of that action in violation of Jefferson Parish personnel rules; and because defendants failed to provide her with written notice of the reasons for the adverse employment action and how the policies were violated. She adds that she was denied notice of a number of subjects of questioning that arose during her pre-disciplinary hearing. She does not address the defendants' argument that the post-termination hearing cured any defects in the pre-disciplinary hearing.

The court finds that Cook has failed to state a claim for a procedural due process violation. The crux of her argument is that she did not receive notice of the basis of the charges against her. She admits she received a letter accusing her of certain policy violations,[5] and she admits she participated in a pre-disciplinary hearing where it appears that she testified and had the opportunity

---

[4] She correctly points out that in Loudermill, the United States Supreme Court rejected the state's argument that a right conferred by the state could be taken pursuant to the state's procedures without separate consideration of constitutional due process. 470 U.S. at 541. Instead, "the constitutional procedural standards of the due process clause are . . . wholly and exclusively federal in nature: a violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation." Stern v. Tarrant Cty. Hosp. Dist., 778 F.2d 1052, 1059 (5th Cir. 1985).

[5] She alleges that the letter advised that she was "accused of attempting to engage in inappropriate communication with someone from an outside agency in order to impair the operational effectiveness of" DJS. (Rec. Doc. 14, at 8). She alleges "she was charged with acts of serious work misconduct in violation of Jefferson Parish Administrative Management Policies: 501 General Provisions; 502- Maintaining Standards of Effective Service; and 503- Reporting and Performance of Duty." Id.

13

to respond to the charges against her. The problem, according to Cook, is that numerous categories of conduct that were discussed in the pre-disciplinary hearing were not within the scope of the written notice she had received. Yet the alleged written reasons for her demotion seem to follow those in the notice letter, which does not support the conclusion that she was demoted based on charges for which she had not received notice.[6] Moreover, her allegations indicate she was allowed to present her side of the case as to these new topics in response to the questions posed.[7] The court finds that due process was provided.

However, even if the pre-disciplinary procedures fall below the necessary standard, defendants correctly point out that a full post-disciplinary proceeding can correct the deficiencies in a pre-disciplinary process. Glenn, 614 F.2d at 472. Once Cook had received notice of the additional basis for discipline at the pre-disciplinary hearing, she was in a position to present her case as to these allegations at the post-termination hearing. She does not dispute that she was able to present her case at the post-termination hearing. Not only did she have a hearing before a Referee, she was also able to appeal the Referee's decision to the Board. The court finds that Cook's complaint fails to state a claim for a procedural due process violation. [8]

---

[6] Cook alleges that the written reasons for her demotion were violation of 501 General Provisions Section 1, Conformance to Law and Section 7 Conduct Unbecoming an Employee; 502 Maintaining Standards of Effective Service Section 1 Establishment; 503 Reporting and Performance of Duty Section 2.1 Licensure and proficiency, 2.2 appropriate action, 2.3 carrying out assigned duties , and 2.4 compliance with policies for attempting to engage in inappropriate communications with someone from an outside agency, failing to be forthcoming in her explanation of what occurred, making contradictory statements regarding her intent, demonstrating poor judgment, and neglecting her duty as a Juvenile Probation Officer II. Id.

[7] See Finch, 333 F.3d at 562 (holding that where the employee had been able to "present her basic argument" that she should not have been transferred, procedural due process was satisfied).

[8] Apparently for the first time in her opposition memorandum, Cook argues that she the delay in conducting the post-termination hearing violated her due process rights. To the extent this new argument can be considered part of her complaint, it is insufficient to state a claim because an allegation of a time period without more does not show that a delay violated due process. Loudermill, 470 U.S. at 547. Cook also seems to argue in opposition for the first time that being put on probation without notice and an opportunity to be heard amounted to a violation of due process. Her complaint clearly identifies her demotion as the basis of her due process claims and there is no indication on the face of the present complaint that she challenges her negative performance review as a due process violation.

### b. *Substantive Due Process Claim*

Defendants insist that Cook has failed to state a substantive due process claim without presenting any argument or law to support their position. The court thus considers Cook's substantive due process claim under the defendants' alternative arguments on municipal liability and qualified immunity.

### i. *Qualified Immunity*

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The question is one of "objective legal reasonableness," not subjective good faith. Id. at 819. "Once a public official has raised the defense of qualified immunity, the burden rests on the plaintiff to rebut it." Bolton v. City of Dallas, Tex., 472 F.3d 261, 265 (5th Cir. 2006). "[A] plaintiff seeking to defeat qualified immunity must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Courts can address the prongs in any order. Id. "The second prong is satisfied only if 'the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.'" Cass v. City of Abilene, 814 F.3d 721, 728 (5th Cir. 2016) (quoting Tolan v. Cotton, 572 U.S. 650, 656 (2014)).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, (1985). Thus, qualified immunity may be considered on a motion dismiss. At that stage, it is "the defendant's

conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (quoting Behrens v. Pelletier, 516 U.S. 299, 309 (1996)).

To establish a substantive due process claim against her employer, plaintiff must show that "(1) that [she] had a property interest/right in [her] employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." Harrington v. Harris, 118 F.3d 359, 368 (5th Cir. 1997). A public employer's decision was arbitrary and capricious when it "'so lacked a basis in fact' that it could be said to have been made 'without professional judgment.'" Jones v. Louisiana Bd. of Sup'rs of Univ. of Louisiana Sys., 809 F.3d 231, 240 (5th Cir. 2015) (quoting State of Tex. By & Through Bd. of Regents of Univ. of Texas Sys. v. Walker, 142 F.3d 813, 819 (5th Cir. 1998)).

In cases considering whether an official is entitled to qualified immunity, courts often ask whether "reasonable public officials could have differed on whether discharging [plaintiff] would violate his constitutional rights." Bolton, 472 F.3d at 266. If so, plaintiff's claims must be dismissed. Id.;[9] see Lewis v. Univ. of Texas Med. Branch at Galveston, 665 F.3d 625, 631 (5th Cir. 2011) ("The fact that 'reasonable minds could disagree on the propriety of [the plaintiff]'s termination' is insufficient to defeat a public official's qualified immunity against a substantive due process claim."). In McMullen v. Starkville Oktibbeha Consolidated School District, for example, the plaintiff argued that the principal and superintendent were arbitrary and capricious in determining she had abandoned her contract. 200 F. Supp. 3d 649, 659 (N.D. Miss. 2016).

---

[9] In Bolton, the issue was whether the police chief had a constitutionally protected interest in continued employment. 472 F.3d at 263. The court found that he did, but also determined that this decision was not apparent under the applicable precedent. Id. at 266. Noting that an official cannot be held "liable for taking action that was arguably supported by decisions of this court," the Fifth Circuit found the official was entitled to qualified immunity because reasonable public officials could have disagreed as to the constitutionality of discharging the plaintiff. Id.

Plaintiff had missed a significant amount of work for health reasons beginning April 16; she did not come by on May 1 to sign her contract though she responded to the email informing employees of the date to sign contracts by asking that her contract be mailed to her or sent home with another teacher; and she notified her principal on May 15 that she had not been cleared to return to work and was uncertain if she would be back before the end of the school year. Id.  at 652-53. She also failed to provide lesson plans for more than the first week she was away. Id.  at 660. Acknowledging that the May 15 notice was less than absolute about whether she would return, the court nonetheless found sufficient facts to support the school official's decision and held that the officials' actions were not arbitrary or capricious or objectively unreasonable. Id.

As to whether Cook has stated a claim for substantive due process, defendants argue merely that she has failed to set forth sufficient facts to state such a claim. In opposition, Cook insists that her demotion was without cause and was arbitrary and capricious because the finding that she lied about who she intended to send the text message to was not supported by any evidence. She argues that Juncker testified at both hearings that he believed she was lying about who she intended to send the text message to and that he would only be satisfied if he could look through the messages and contacts on her cell phone. She alleges that her demotion was based on suspicion, conjecture, and false statements and that there is no evidence to support the claim that she violated any policy, shared information outside the agency, or lied about who she intended to send the text message to.

The defendants argue that Juncker and Trosclair are entitled to qualified immunity. They point out that the only allegation as to Trosclair with regard to the due process violation is that he participated in the investigation regarding the text message and attended the pre-disciplinary hearing. The court notes that Cook also alleges that Trosclair required her to respond to questions about the text message immediately. And in opposition, Cook points out that she alleges that

Trosclair was overheard stating that he was going to "get" Cook.[10] But Cook does not allege that Trosclair made the decision to demote her, recommended the decision to demote her, or otherwise tainted the pre-disciplinary hearing.  It is unclear how these allegations could establish liability of Trosclair for a violation of Cook's substantive due process rights, let alone how these alleged actions could be found to have violated a clearly established constitutional right. The court finds that Cook's substantive due process claims against Trosclair must be dismissed.

As to Juncker, Cook alleges that he instructed Trosclair to conduct the investigation and that he participated in the pre-disciplinary and post-termination hearings at which he demanded to see her personal cell phone. She alleges that at the post-termination proceeding, Trosclair testified that he believed she was lying about who she meant to send the text message to. She alleges that he never provided any proof that she lied. Apparently Juncker is the decision maker responsible for issuing Cook's demotion following the pre-disciplinary hearing.[11] Taking the allegations in the complaint in the light most favorable to Cook, it appears that Cook's demotion was based on an innocuous text message that she never intended to, and indeed did not, send to an individual outside of DJS.  At this stage, there is no indication that Juncker had any evidence to support his conclusion that she intended to send the text message outside of DJS besides suspicion by him and some of the other employees. Moreover, based on the facts alleged, it is unclear how intending to (but not actually) sending the text message outside of DJS could amount to a policy violation. The court finds the allegations sufficient to plausibly conclude that Juncker acted in an arbitrary and capricious manner in demoting Cook and that this allegedly arbitrary and capricious action defeats

---

[10] Cook also notes that she has alleged that Home Manager Sacks told her that Trosclair and Juncker had required him to discipline her for the March 2021 incident involving the admission for a juvenile resident who tested positive for COVID. As noted in footnote 4, supra, this incident does not appear to be related to her demotion.

[11] While Cook does not explicitly allege that Juncker was the decision maker in her Complaint, based on his position as Director of DJS and her allegations concerning his involvement in the proceeding, it appears that he was the decision maker. Further, in opposition, she argues that "Juncker demoted Cook without evidence of any policy violation."

qualified immunity. Of course there is another side to the story, but at this stage, the court finds that Cook has stated a claim for a violation of her substantive due process rights by Juncker and this claim will be allowed to proceed.

### i. Municipal Liability

A local government is only liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978). A plaintiff must establish "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). To establish an official policy, the plaintiff must show

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984). "Isolated unconstitutional actions by municipal employees will almost never trigger liability." Piotrowski, 237 F.3d at 578.

Defendants argue that Cook cannot state a claim for municipal liability because she has not alleged facts that show an official policy. Instead, they characterize Cook's allegations as reflecting isolated, allegedly unconstitutional actions by municipal employees.

Cook responds that she has alleged sufficient facts to put defendants on notice of her claims. She insists that it is official Jefferson Parish policy that civil servants be disciplined only

for cause and with due process. She argues that DJS has the burden of establishing that she violated a policy. Further, she argues that Director Juncker was the policy maker[12] for DJS and was aware of these policies, yet he demoted her without any evidence of a policy violation and with knowledge that his actions were against policy and in violation of her rights.

In reply, defendants argue that Cook merely recites the elements to establish municipal liability without any factual allegations to show she has stated a claim. They insist that her complaint does not allege any official policies or customs of Jefferson Parish that resulted in or were the moving force of any purported deprivation of Cook's constitutional rights.

The court finds that Cook has failed to state a claim for municipal liability. She has not alleged the existence of an official policy or regulation that resulted in the violation of her constitutional rights. To the contrary, she appears to argue that the official policy was to provide due process but that this policy was violated. She does not allege any persistent or widespread practice or unofficial custom that resulted in the deprivation of her rights. She alleges that in her specific situation she was demoted without being provided adequate notice of the charges against her and further that the decision to demote her was arbitrary and capricious. There is nothing in this claim or the facts alleged that implicates liability of Jefferson Parish through an official policy or widespread practice. Accordingly, Cook's §1983 claim against Jefferson Parish must be dismissed.

---

[12] Cook does not allege or provide any law to support finding that Juncker or any of the other employees were officials with final policy making authority for Jefferson Parish such that the Parish could be held liable for the policy maker's single decision. See Pembaur v. City of Cincinnati, 475 U.S. 469, 482-84 (1986) (holding that the county was subject to municipal liability where the deputy sheriffs who conducted an unconstitutional search had been instructed to do so by the County Prosecutor and where the Prosecutor had been found under state law to be capable of establishing county policy).

4. *Defamation*

To establish a claim for defamation under Louisiana law, "a plaintiff must prove the following elements: '(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.'" Schmidt v. Cal-Dive Int'l, Inc., 240 F. Supp. 3d 532, 542 (W.D. La. 2017) (quoting Kennedy v. Sheriff of E. Baton Rouge, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 674). "[C]asual remarks made in informal conversation, even if they include unflattering words, do not constitute actionable defamation." Barber v. Marine Drilling Mgmt., Inc., No. CIV.A. 01-1986, 2002 WL 237848, at *6 (E.D. La. Feb. 15, 2002) (quoting Guillory v. State Farm Ins. Co., 94-1405 (La. App. 4 Cir. 9/28/95), 662 So. 2d 104, 112). "To be considered 'published,' for purposes of a defamation claim, statements must be made to a third party, other than the person allegedly defamed." Id.  Importantly, "intra-corporate communications fail to satisfy the 'publication' element of a cause of action for defamation" because such a communication, when among employees of a corporation and related to their duties for the corporation "'is merely a communication of the corporation itself.'" Id.   (quoting Commercial Union Ins. Co. v. Melikyan, 424 So. 2d 1114, 1115 (La. Ct. App. 1982)).

Defendants argue that Cook cannot state a claim for defamation because she has failed to allege facts to support the elements of a defamation claim and further, because she cannot establish the publication element under the intra-corporate statement doctrine. Cook insists that she states a claim because she alleges that Juncker, Ruiz, Conley, and Trosclair falsely stated that Cook was lying about who she intended to send the November 2019 text message to, they disclosed this information to the public by stating it during a public hearing, it was negligent for them to do so,

and their statements caused harm to her reputation and emotional pain. She insists that the alleged statements were not made between employees within the course and scope of their employment.

The court agrees with the defendants that the allegedly false statements of the defendants during Cook's pre and post termination disciplinary hearings were intra-corporate statements and cannot support a claim for defamation. Cook does not dispute that all the defendants are employees of DJS. In testifying at her disciplinary hearing, they were clearly acting within the scope of their employment. Accordingly, their statements cannot be considered published for purposes of a defamation action. To the extent Cook relies on the allegedly "public" nature of one or both of the hearings, she has failed to allege that these hearings were public or that member of the public were present. To the extent she is able to allege facts to support finding that the statements made by the DJS employees were published, she may seek leave to amend. Accordingly, Cook's defamation claim is dismissed without prejudice.

    5. *Conspiracy to Interfere with Civil Rights under § 1985*

To state a conspiracy claim under §1985, plaintiff must allege :

(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

Hilliard v. Ferguson, 30 F.3d 649, 652–53 (5th Cir. 1994). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). The first element cannot be satisfied by two individuals who are part of the same entity because a "corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts

of the agent are the acts of the corporation." <u>Hilliard v. Ferguson</u>, 30 F.3d 649, 653 (5th Cir. 1994) (quoting <u>Nelson Radio & Supply Co. v. Motorola, Inc.</u>, 200 F.2d 911, 914 (5th Cir. 1952)). For example, in <u>Hilliard</u>, the Fifth Circuit held that "a school board and its employees constitute a single legal entity which is incapable of conspiring with itself for the purposes of § 1985(3)." <u>Hilliard v. Ferguson</u>, 30 F.3d 649, 653 (5th Cir. 1994). Similarly, in <u>Aucoin v. Kennedy</u>, the Eastern District of Louisiana dismissed plaintiff's conspiracy claim under §1985(3) under the intra-corporate conspiracy doctrine where the alleged conspirators were the Fire District and two of its agents—the chairman and the fire chief. 355 F. Supp. 2d 830, 846 (E.D. La. 2004). In contrast, the Southern District of Texas in <u>Hill v. City of Houston</u> held that the plaintiff could state a conspiracy claim where the alleged conspirators were members of different departments within the City of Houston "a huge organization with numerous branches and departments independent from one another." 991 F. Supp. 847, 851 (S.D. Tex. 1998). Specifically, the plaintiff alleged that "the Fire Department, Fleet Management, and Legal Department of the City of Houston conspired to cover up the events relating to the fire and subsequent investigation." <u>Id.</u>  The court was not convinced that the intra-corporate conspiracy doctrine should result in dismissal of plaintiff's claims. <u>Id.</u>

Defendants argue that Cook cannot state a conspiracy claim because all of the individuals who allegedly participated in the conspiracy are employed by Jefferson Parish and, as such, cannot conspire with each other pursuant to the intra-corporate conspiracy doctrine. Further, they argue that Cook has failed to plead facts to support the elements of a conspiracy. Cook relies on <u>Hill</u>, and argues that she alleges that employees from different departments within DJS and Human Resources conspired to discriminate against her.

The court agrees with defendants that Cook's conspiracy claims under §1985(3) must be dismissed. Cook alleges a conspiracy between Ruiz, Conley, Ronquille, Juncker, Trosclair, and Tilton. Each of the alleged conspirators are part of DJS, a single department within the Jefferson Parish. Per Cook's complaint, Juncker is the Director of DJS, Trosclair is the Assistant Director, Ruiz is Probation Manager, Ronquille is the Drug Court Probation Officer, Conley is Probation Officer III, and Tilton is the HR Manager for DJS.  This case is not like <u>Hill</u> where the City's Fire Department, Legal Department, and Fleet Management Department were implicated. Moreover, to the extent Human Resources could be considered a separate entity from DJS in spite of Cook's characterization of Tilton's role, beyond Tilton's presence at the hearing, Cook alleges no facts supporting a finding that she was part of the alleged conspiracy to fabricate a reason to demote Cook.

Cook cannot state a claim for conspiracy under §1985(3) and therefore this claim must be dismissed.

6. *Claims not Plead in the Amended Complaint*

Defendants ask that to the extent that Cook is still asserting a Section 1981 claim against Juncker and Trosclair by referencing "defendants" in Count 1, this claim be dismissed because she represented that she was dismissing this claim in filing her Motion for Leave to Amend. Cook does not dispute this characterization. Accordingly, the court orders that Cook's Section 1981 claim against Juncker and Trosclair be dismissed.

Defendants also ask that the court dismiss any harassment or hostile work environment claim that Cook has attempted to assert against Jefferson Parish because they sought to dismiss this claim in their original motion to dismiss and Cook did not assert a separate harassment and hostile work environment claim in her Amended Complaint. Cook does not dispute this

characterization in her opposition. Accordingly, the court orders that Cook's harassment and hostile work environment claim, if any, is dismissed.

Conclusion

For the foregoing reasons, the defendants' Partial Motion to Dismiss (Rec. Doc. 15) is GRANTED in part and DENIED in part. Cook's claim for punitive damages against Jefferson Parish under 42 U.S.C. §1981, her procedural due process claim, her substantive due process claim against Trosclair, her substantive due process claim against Jefferson Parish; her claim for conspiracy under 42 U.S.C. §1985, any §1981 claim against Juncker and Trosclair, and any harassment or hostile work environment claim are hereby dismissed with prejudice. Cook's defamation claim is dismissed without prejudice. Cook's substantive due process claim against Trosclair in his individual capacity shall be allowed to proceed.

New Orleans, Louisiana, this 3rd day of January, 2022.

Janis van Meerveld<br>
United States Magistrate Judge