UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHANTRELL COOK | * | CIVIL ACTION |
| | * | NO. 21-719 |
| | * | |
| VERSUS | * | DIVISION 1 |
| | * | |
| | * | MAGISTRATE JUDGE |
| PARISH OF JEFFERSON, ET AL. | * | JANIS VAN MEERVELD |
| | * | |
| ********************************** | * | |

<u>ORDER AND REASONS</u>

Before the Court is defendants' Partial Motion to Dismiss (Rec. Doc. 31). Because plaintiff has sufficiently plead the publication element of her defamation claim, defendants' motion to dismiss is DENIED in part. Because plaintiff has not stated a claim under La. Rev. Stat. § 51:2256 and even if she had, it has prescribed, the motion is GRANTED in part as to her La. Rev. Stat. § 51:2256 claim, which is hereby dismissed.

<u>Background</u>

The allegations in plaintiff Chantrell Cook's Second Supplemental and Amending Complaint are largely the same as those in her First Supplemental and Amending Complaint and are summarized below. Cook is an African-American woman who has been employed at the Jefferson Parish Department of Juvenile Services ("DJS") since 2006. In this lawsuit, she alleges that her demotion from Juvenile Probation Officer II to Juvenile Detention Officer II on January 4, 2020, resulted in a violation of her rights under state and federal law and that statements made by the defendants during her termination proceedings defamed her.

Cook alleges that she began working in the Drug Court Unit of DJS in 2015 where she was repeatedly praised by the families she worked with. Around March 2019, it was announced that Cook would be removed from Drug Court and replaced by Erin Ronquille, a Caucasian female.

1

Cook was told the move was due to the need to rotate probation officers out of units every two to three years. However, she alleges that Luis Bustamante, a Caucasian male, had held his position for more than five years without being rotated out. Being moved out of the Drug Court Unit would reduce Cook's pay because she would no longer be eligible for additional pay for being on call or for a cell phone stipend.

In May 2019, Cook was instructed to train Ronquille. Cook alleges that she had not been trained by her predecessor when she was transferred into the Drug Court Unit. Cook alleges that probation manager Joan Ruiz began treating her differently and she believes this is because Ronquille was complaining to Ruiz about Cook. Ronquille advised Ruiz she no longer required training and became the official Drug Court probation officer as of May 21, 2019.

Cook complains that before she was transferred out of Drug Court, she was instructed not to be present at Drug Court hearings or visit with the two other Drug Court team members, Susie Savage and Ianisha Chairs, because it made Ronquille uncomfortable. She was also prohibited from attending the graduations of the juvenile probationers. Cook was shocked because she wanted to support the probationers. Cook alleges that no other probation officer was subject to these requirements. She advised Probation Officer III Gloria Miesky that she felt like she was being harassed because the same demands had not been made of other probation officers, and Miesky recommended a mediation between Ruiz, Cook, Drug Court Supervisor Decou-Snowton, and Ronquille. Ruiz denied the request.

Cook requested a meeting with the Director, Roy Juncker, who met with her, Ronquille, Mieskey, Ruiz, and Decou-Snowton on or about August 19, 2019. Cook alleges that when she advised she was being treated unfairly and discriminated against, Juncker yelled at her and defended Ronquille. Cook asserts that her concerns were dismissed and never properly addressed.

2

On November 25, 2019, Cook was called by Probation Officer III Colleen Conley, her former supervisor, and asked about a former Drug Court probationer while Ronquille was in Conley's office. Cook was not the Drug Court supervisor at that time. Cook asserts that she responded to Conley's questions and then sought to meet with Lashaunda Thomas, the Drug Court Supervisor, to advise her of the conversation. Cook alleges that because Thomas was meeting with other employees, she decided to send Thomas a text message to advise of the conversation with Conley. Cook then mistakenly sent the message to Conley, stating:

> Colleen just called me and asked about my kid I transferred the Probation out of town to live with his brother. I don't know if y'all trying to transfer someone in DC but I think she just came from by Colleen (not 100% sure). This is the second time she asked me about a pass case of mine.

(Rec. Do. 14, at 7). Cook realized her mistake and sent a follow up message stating "Come on  I know you want to have a conversation." Id.

Conley did not respond, but instead called Ruiz, who was on vacation, and told her that she believed Cook meant to send the message to Ianisha Chairs (an African-American Drug Court employee). Ruiz called Juncker who instructed Christopher Trosclair, the Assistant Director of DJS, to begin an investigation. At 9:36 p.m., Trosclair sent Cook a series of allegedly accusatory questions about the text message with a deadline to respond by 3:00 p.m. the following day. Cook provided her responses to Trosclair, including her explanation that she had intended to send the message to the current Drug Court supervisor, Tomas, in case there was a similar situation going on with a current Drug Court probationer as the situation with the probationer about whom she had been questioned by Conley.

On December 11, 2019, Cook was issued a Pre-Disciplinary Hearing Letter accusing her of attempting to engage in inappropriate communication with someone from an outside agency in order to impair the operational effectiveness of DJS and charging her with acts of serious work

3

misconduct in violation of Jefferson Parish Administrative Management Policies: 501 - General Provisions; 502 - Maintaining Standards of Effective Services: and 503 - Reporting and Performance of Duty.

Cook appeared for her pre-disciplinary hearing on December 16, 2019. She alleges that she was peppered with questions from HR Manager Gretchen Tilton, Trosclair, Ruiz, and Juncker. She alleges that although some of the discussion concerned the facts outlined in the pre-hearing notice, additional questions and allegations were presented such as: evaluations issued to Cook while under Conley's supervision; complaints by Ronquille that she was being undermined; who Cook communicates with on the Drug Court team—specifically Chairs, Savage, and Courtney Schroeder—and how often; Cook's transfer from the Drug Court team; if Cook ever spoke to anyone outside the agency to try and prevent her transfer out of the Drug Court Unit; if Cook ever had any discussion with Blair Constant, Assistant District Attorney for Drug Court, about staying in Drug Court; and questions and pressure to provide Juncker with her personal cell phone so he could look at her private messages.

Cook alleges that prior to her demotion, Juvenile Home Detention Officer Silby overheard Trosclair stating he was going to "get" Cook. Shortly thereafter, Silby saw Ronquille depart from Trosclair's office.

Cook received a disciplinary letter on January 2, 2020, advising her of her demotion and policy violations for attempting to engage in inappropriate communication with someone from an outside agency; failing to be forthcoming in her explanation of what occurred; making contradictory statements regarding her intent; demonstrating poor judgment; and neglecting her duty as a Juvenile Probation Officer II.

The demotion was effective January 4, 2020, and required that she work from 3:00 p.m. to 11:00 p.m. at the Rivarde Detention Facility instead of 9:00 a.m. to 5:00 p.m. The change in schedule was an additional burden for her family because of childcare needs. Additionally, her previous position had allowed her to use her master's degree.

Meanwhile, Cook's yearly evaluation was due to be completed on January 1, 2020. Cook completed her self-evaluation on December 9, 2019, and the evaluation was completed by Ruiz on January 7, 2020. Ruiz lowered the rating that Cook's supervisor had initially awarded, including a rating of 0 in factor U7: Working with Others. As support for her rating, Ruiz noted the November 25 incident and the assertion that Cook tried to block her transfer out of Drug Court by contacting two individuals to intercede for her. Cook alleges that during the disciplinary hearing at which Ruiz was present,  she stated that she never asked anyone to intervene for her to prevent her transfer out of Drug Court. Cook alleges that Ruiz has no documentation or information to support her false statement. Cook also alleges that Ruiz was not her supervisor and that the proper procedure was for the supervisor to complete the evaluation. As a result of the 0 rating, Cook was placed on probation and became ineligible for a 5% raise.

Cook filed a Civil Service appeal of her demotion on January 28, 2020. The hearings were continued seven times with the final day of testimony on March 2, 2021. At the hearing Juncker testified that he believed Cook was lying about who she meant to send the text to and that he would only be satisfied if he could look at her personal phone messages with Savage and Chairs and her contact list. Ruiz also testified that she believed Cook meant to send the text message to Chairs. Cook alleges that Juncker never provided any proof that Cook had lied or did anything in violation of any policy. Juncker further testified that Cook was disciplined for failing to follow a directive from Ruiz not to participate in Drug Court. Cook complains that this directive was never given to

5

Cook and further, this reason for her demotion was not provided to her in writing and was not discussed at her pre-termination proceeding.

The Referee dismissed Cook's appeal. Cook alleges this decision was based on a factually erroneous ruling that did not even get the dates of the incident correct.

Cook then filed an appeal to the Board, which, she claims, refused to review the information and evidence provided and instead upheld the ruling. Cook insists that she presented proof that the rulings were false and that the ruling found that Cook had been demoted for failing to follow a directive that was never mentioned in her demotion letter or at all until Juncker's March 2021 testimony.

Cook alleges that she continued to be discriminated against, harassed, and retaliated against after her move to Rivarde.[1]

In support of her claim for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, she alleges that she engaged in protected activity "by opposing the disparate treatment and discrimination" alleged in her complaint "including but not limited to advising her superiors that she believed she was being harassed, targeted, and discriminated against."

In support of her defamation claim, Cook alleges that the statements made by Juncker, Ruiz, and Conley that Cook was lying about who she intended to send the text message to in November and the subsequent rumors have defamed her and continue to cause damage to her reputation and career development. She alleges that the statements were published when stated during the January 6, 2021, and March 2, 2021, civil service hearings because non-DJS employees were present, including Annie Vaugh and Halie Ducote on January 6, 2021, and Yvonne Keller, Paul Casadaban, Adrienne Breaux, Gretchen Tilton, and Greg Alexander on March 2, 2021.

---

[1] Because these additional facts are not relevant to the claims presently being considered, they are not summarized here.

In support of her claim for conspiracy to retaliate and discriminate, Cook alleges—as she previously did in alleging conspiracy under 42 U.S.C. § 1985, a claim which was dismissed for failure to state a claim—that Ruiz, Conley, Trosclair, and Juncker acted together to create and fabricate a reason to demote Cook. She alleges they provided false and misleading statements about unsubstantiated claims about the mistaken text message. She alleges that Trosclair, Juncker, and Ruiz peppered her with questions about her move from Drug Court, which had not been included as a reason for the hearing and that Juncker demanded to see her private cell phone messages and repeatedly tried to intimidate her and call her a liar. She alleges that when she appealed her demotion, Juncker testified that Cook was disciplined for failing to follow a directive from Ruiz not to participate in Drug Court, but according to Cook, no such directive was ever given or previously raised as a basis for her demotion. She alleges that Juncker, Trosclair, Conley, and Ruiz conspired to retaliate against Cook and entice other Department of Juvenile Service employees to aid, abet, incite, compel, or coerce other persons to engage in acts and practices in violation of the state anti-discrimination and retaliation laws resulting in her demotion, reduced pay, and emotional distress.

Cook filed this lawsuit on April 7, 2021, against Jefferson Parish, Trosclair, and Juncker. The parties unanimously consented to proceed before the magistrate judge and the matter has been referred to the undersigned for all proceedings. The court granted in part an earlier partial motion to dismiss filed by the defendants and Cook subsequently amended her complaint for a second time. The defendants then filed the present Partial Motion to Dismiss. (Rec. Doc. 31).

<u>Law and Analysis</u>

*1.  Standard for Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement

to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and

money by the parties and the court." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir.

2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to

move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be

granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing

them in the light most favorable to the plaintiff." <u>*In re* Katrina Canal Breaches Litigation</u>, 495 F.3d

191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule

12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is

plausible on its face. Factual allegations must be enough to raise a right to relief above the

speculative level." <u>Id</u>. (citation, footnote, and quotation marks omitted). On that point, the United

States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged. The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant has acted
> unlawfully. Where a complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility and plausibility of
> entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

*2.  Conspiracy under La. Rev. Stat. 51:2256.*

Under La. Rev. Stat. § 51:2256:

It shall be an unlawful practice for an employer as defined in R.S. 23:302 to
conspire:
(1) To retaliate or discriminate in any manner against a person because he has
opposed a practice declared unlawful by this Chapter or by Chapter 3-A of Title 23

of the Louisiana Revised Statutes of 1950, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

(2) To aid, abet, incite, compel, or coerce a person to engage in any of the acts or practices declared unlawful by this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

(3) To obstruct or prevent a person from complying with the provisions of this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950 or any order issued thereunder.

(4) To resist, prevent, impede, or interfere with the commission, or any of its members or representatives, in the lawful performance of duty under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

La. Stat. Ann. § 51:2256. The referenced "Chapter 3-A of Title 23" provides for "Prohibited Discrimination in Employment." Louisiana Revised Statute § 23:302 referred to in the preamble defines "employer" as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee" as long as the "employer employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." Id. § 23:302(2).

Section 51:2256 has not been consistently applied in the courts. First, there is a string of cases—including some recent—adopting the view of the Louisiana Third Circuit Court of Appeal in Lowry v. Dresser, Inc., 2004-1196 (La. App. 3 Cir. 2/2/05), 893 So. 2d 966, 968, that § 51:2256 no longer applied to employment discrimination following revisions to the statute in 1997. See Glover v. Smith, 478 F. App'x 236, 243 (5th Cir. 2012); Johnson v. JP Morgan Chase Bank, N.A., 293 F. Supp. 3d 600, 615 (W.D. La. 2018). But these cases considered the text of § 51:2256 when it referred only to violations of the "this Chapter," i.e., Title 51, Chapter 38. In 2014, the statute was amended to apply also to violations of Louisiana's Employment Discrimination Law found in

"Chapter 3-A of Title 23." <u>See</u> 2014 La. Sess. Law Serv. Act 756 (S.B. 412) (West). It is now clear that § 51:2256 applies in the employment discrimination context.

More recently, there are some cases that conclude that because Louisiana's employment discrimination law is substantially similar to federal employment discrimination law, a plaintiff who states a claim for retaliation under Title VII also states a retaliation claim under §51:2256. <u>Lee v. City of Shreveport</u>, No. CV 21-3232, 2022 WL 2161941, at *5 (W.D. La. June 15, 2022); <u>Johnson v. Associated Wholesale Grocers, Inc.</u>, No. CV 18-5919, 2019 WL 1572485, at *8 (E.D. La. Apr. 11, 2019); <u>see</u> <u>Martin v. Winn-Dixie Louisiana, Inc.</u>, No. 3:13-CV-00682-JWD, 2015 WL 1281943, at *7 (M.D. La. Mar. 20, 2015) (holding that the present text of "La. R.S. 51:2256 creates a cause of action for retaliation in the case of employees alleging discrimination based on a disability, race, color, religion, sex, national origin, or pregnancy, childbirth and related medical conditions."). However, these courts do not address the statute's explicit use of the word "conspire" to modify all four types of prohibited conduct.

In contrast,  other courts hold that §51:2256 applies <u>only</u> to conspiracies. <u>Johnson v. JP Morgan Chase Bank, N.A.</u>, 293 F. Supp. 3d 600, 615 (W.D. La. 2018); <u>Jones v. City of Monroe</u>, No. 3:19-CV-00832, 2019 WL 5488603, at *10 n. 15 (W.D. La. Oct. 8, 2019), <u>report and recommendation adopted,</u> No. 3:19-CV-00832, 2019 WL 5491922 (W.D. La. Oct. 24, 2019); <u>see</u> <u>Phelps v. Calumet Lubricants Co., LP</u>, No. CV 15-2625, 2016 WL 4497011, at *3 (W.D. La. Aug. 24, 2016). For example, the court in <u>Phelps</u> applied the Black's Law Dictionary definition of "conspiracy" to a plaintiff's claim under § 51:2256. 2016 WL 4497011, at *3. Black's Law Dictionary defines "conspiracy" as "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective, and (in most states) action or conduct that furthers the agreement; a combination for an unlawful purpose." <u>Id.</u>  (quoting

Conspiracy, Black's Law Dictionary (10th ed. 2014)). The <u>Phelps</u> court dismissed the plaintiff's § 51:2256 claim where she pled no facts showing that an agreement had been reached between two or more persons to retaliate against her or that two or more persons had a common intent to retaliate against her. <u>Id.</u> Her conclusions to that effect, without supporting facts, were held to be insufficient. <u>Id.</u>

The court finds no basis in the statutory text from which to conclude that §51:2256 makes retaliation alone,[2] without a conspiracy to retaliate, unlawful. The statute is titled, "Conspiracy to violate human rights and discrimination laws." It specifically makes it unlawful for an employer to "conspire to," among other things, retaliate or discriminate against a person who has opposed an unlawful employment discrimination practice.[3] The plain text of the statute requires a conspiracy. Therefore, the court considers whether Cook has stated a claim for conspiracy to retaliate.

On this point, defendants argue that Cook's claims are conclusory and that she fails to allege that the individuals she implicates engaged in any discussions or agreements or otherwise

---

[2] Presumably to address the possibility that this court interprets §51:2256 as a mirror image of a Title VII retaliation claim, defendants say the state law claim is duplicative. Of note, defendants did not move to dismiss Cook's Title VII retaliation claim in any of their three motions to dismiss. To the extent §51:2256 is a duplicate of Title VII, however, this would not provide a basis to dismiss the claim. Parties commonly pursue Louisiana Employment Discrimination Law claims simultaneously with their Title VII claims.

[3] Prior to the 2014 amendment, § 51:2256 began "[i]t shall be an unlawful practice for a person or two or more persons to conspire." 1988 La. Sess. Law Serv. 886. Presumably, a "conspiracy" was only implicated and required when "two or more persons" were involved as opposed to "a person." When changing "person or two or more persons" to "employer" in 2014, the legislature left in the word "conspire," indicating that a conspiracy is now always required. To the extent the continued use of the word "conspire" was not intended to require the employer to conspire, the court cannot remediate the error. As Judge Fallon observed in interpreting the same statute prior to the 2014 amendment:

> The Court does not disagree with the gravamen of the Plaintiffs' arguments: that is, that the absence of a broad anti-retaliation provision in the employment discrimination context is regressive social policy and illogical. However, the new Employment Discrimination Law does not contain such a provision. Whether or not this absence is the result of drafting errors is not for the Court to determine. It is well established in matters of statutory interpretation, that courts begin with the plain language and structure of the statutes. <u>Coserv Ltd. Liability Corp. v. Southwestern Bell Telephone Co.</u>, 350 F.3d 482, 486 (5th Cir.2003). When the language is clear, as it is in this case, the court looks no further to divine the intent of the legislature.

<u>Smith v. Par. of Washington</u>, 318 F. Supp. 2d 366, 373 (E.D. La. 2004).

conspired against her. They further argue that she fails to allege with any specificity how they retaliated against her. The defendants also point out that most of Cook's allegations are identical to those she raised in her conspiracy claim under 42 U.S.C. §1985, which this court dismissed for failure to state a claim.[4] Additionally, the defendants argue that Cook's allegations regarding the alleged conspiracy by the individuals are insufficient to implicate Jefferson Parish.

Plaintiff responds by summarizing the allegations of her complaint and arguing that she has stated a claim. She does not point to any agreement between Trosclair, Juncker, Ruiz, Ronquille, and Conley to retaliate against her for opposing employment discrimination. She argues these individuals "acted together," but she cites no facts to support finding that there was any agreement between them. There are no allegations from which the court could plausibly conclude that Trosclair, Juncker, Ruiz, Ronquille, and Conley were engaged in a joint effort to retaliate against her for complaining that she was being harassed and discriminated against. Cook has failed to state a claim under La. Rev. Stat. §51:2556.

3. *Prescription of §51:2556 Claim*

Even if Cook has stated a claim under §51:2556, defendants argue it has prescribed. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003); see Songbyrd, Inc. v. Bearsville Recs., Inc., 104 F.3d 773, 775 n. 3 (5th Cir. 1997). Discrimination claims under Louisiana's Employment Discrimination Law are subject to a one year prescriptive period that is

---

[4] These claims were dismissed because the court found that the intra-corporate conspiracy doctrine prevented a finding of a conspiracy because each of the alleged conspirators was part of DJS, a single department with Jefferson Parish. Defendants do not argue that this doctrine precludes Cook's recovery under § 51:2556.

suspended during the pendency of an EEOC investigation for a period of up to six months. La.

Rev. Stat. § 23:303(D). Specifically, the statute provides:

> Any cause of action ***provided in this Chapter*** shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

La. Rev. Stat. § 23:303 (emphasis added). The "Chapter" referred to is Chapter 3-A of Title 23,

"Prohibited Discrimination in Employment."

There is some question as to whether the suspensive period also applies to causes of action

under Louisiana Revised Statute § 51:2256, which appears in Chapter 38 of Title 51, not Chapter

3-A of title 23. In Roth v. N.J. Malin & Associates., Inc., Magistrate Judge Wilkinson analyzed

the text of the statute in effect at the time and its statutory history and concluded that the suspensive

period in §23:303 did not, by its own terms, apply to plaintiff's claim under §51:2256 and that the

legislature, in concurrently amending both the Louisiana Employment Discrimination Law and the

Louisiana Commission on Human Rights Act, could have specified that the suspensive period in

the Louisiana Employment Discrimination Act applies to causes of action under §51:2256, but the

legislature did not do so. No. CIV. A. 98-1793, 1998 WL 898367, at *3 (E.D. La. Dec. 21, 1998).

But § 51:2256 has been amended since that time. In 1998 when Judge Wilkinson considered the

issue, §51:2256 contained no reference to the Louisiana Employment Discrimination Law. The

2014 amendments added several references to the Louisiana Employment Discrimination Law, as

discussed above.

Cook argues that §51:2256 incorporates the Louisiana Employment Discrimination Law

and that, therefore, the suspensive period applies. She cites no case law in support of this

conclusion. Defendants argue that no suspensive period applies, citing a 2020 decision from the

Middle District of Louisiana where the court applied a one year prescriptive period to the plaintiff's claim under §51:2256, without analyzing whether or not the suspensive period in § 23:303(D) might apply. <u>Clark v. Auger Servs., Inc.</u>, 443 F. Supp. 3d 685, 712 (M.D. La. 2020). The <u>Clark</u> court simply cited Judge Wilkinson's <u>Roth</u> decision without consideration of the intervening statutory amendment.

The court finds that although the 2014 amendments made it unlawful to conspire to retaliate against an employee for opposing a practice unlawful under the Louisiana Employment Discrimination Law, this cannot be interpreted as incorporating all parts of the Louisiana Employment Discrimination Law into §51:2256, including a prescriptive period that is not referenced. By its plain terms, § 23:303(D) does not apply to claims under §51:2256 because such claims are not "provided in" Title 23 Chapter 3-A. Thus, the court finds that the one year prescriptive period is not suspended while the plaintiff's EEOC charge is pending.[5] The parties agree that Cook's lawsuit was not filed within one year of her demotion. Accordingly, even if Cook has stated a claim for conspiracy to retaliate under §51:2256, that claim has prescribed.

*4. Defamation*

To establish a claim for defamation under Louisiana law, "a plaintiff must prove the following elements: '(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.'" <u>Schmidt v. Cal-Dive Int'l, Inc.</u>, 240 F. Supp. 532, 542 (W.D. La. 2017) (quoting <u>Kennedy v. Sheriff of E. Baton Rouge</u>, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 674). "[C]asual remarks made in informal conversation, even if they include unflattering words, do not constitute actionable defamation." <u>Barber v. Marine Drilling Mgmt., Inc.</u>, No. CIV.A. 01-1986,

---

[5] Again, to the extent this is a drafting error or oversight, the court is not in a position to rectify it. <u>See</u> footnote 3, <u>supra</u>.

2002 WL 237848, at *6 (E.D. La. Feb. 15, 2002) (quoting <u>Guillory v. State Farm Ins. Co.</u>, 94-1405 (La. App. 4 Cir. 9/28/95), 662 So. 2d 104, 112). "To be considered 'published,' for purposes of a defamation claim, statements must be made to a third party, other than the person allegedly defamed." <u>Id.</u>  Importantly, "intra-corporate communications fail to satisfy the 'publication' element of a cause of action for defamation" because such a communication, when among employees of a corporation and related to their duties for the corporation "'is merely a communication of the corporation itself.'" <u>Id.</u>  (quoting <u>Commercial Union Ins. Co. v. Melikyan</u>, 424 So. 2d 1114, 1115 (La. Ct. App. 1982)).

When the court granted in part defendants' previous partial motion to dismiss, the court dismissed Cook's defamation claim without prejudice for failing to allege facts supporting the publication of the allegedly defamatory statements. The court observed that although Cook had alleged the hearings were "public," she had not alleged any facts to support finding that any members of the public were present or that the allegedly defamatory statements otherwise went beyond the DJS employees that were there. She has now incorporated additional allegations regarding the presence of specific individuals that she alleges were not employed by DJS.

Defendants  argue that the defamation claim must still be dismissed because she does not allege that these individuals were not Jefferson Parish employees, only that they are not DJS employees.[6] Defendants insist that the presence of the individuals identified by Cook cannot amount to publication under the intra-corporate doctrine.

Essentially the Defendants ask the court to hold that, as a matter of law, the presence of a Jefferson Parish employee could never amount to a publication for the purposes of a defamation claim, regardless of whether the department is related to the DJS or completely independent and

---

[6] They do not challenge the other elements of Cook's defamation claim at this time.

15

regardless of whether they were there in their capacity as employees. Thus, they reason, Cook must plead that they are non-Jefferson Parish employees. She has not done so. Defendants present no support for stretching the intra-corporate doctrine that far. It is possible that even if the non-DJS employees were Jefferson Parish employees, their presence would still result in a publication. Plaintiff is not required to negate every possible defense. While it may be appropriate at the summary judgment stage to find that the allegedly defamatory statements were not published because the non-DJS employees who were present were employees of Jefferson Parish participating in the hearings because of their duties as employees or for some other reason, or because a qualified privilege attaches, at this time, the court takes the facts in the complaint as true and in the light most favorable to the plaintiff and concludes that Cook has stated a plausible claim for defamation.

Conclusion

Because Cook has sufficiently plead the publication element of her defamation claim, defendants' Partial Motion to Dismiss (Rec. Doc. 31) is DENIED in part. Because plaintiff has not stated a claim under La. Rev. Stat. § 51:2256 and even if she had, it has prescribed, the motion is GRANTED in part as to her La. Rev. Stat. § 51:2256 claim, which is hereby dismissed.

New Orleans, Louisiana, this 16th day of August, 2022.

Janis van Meerveld
United States Magistrate Judge